**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**LUFKIN DIVISION**

A.O.L., an individual,
Plaintiff,
v.
G6 HOSPITALITY, LLC;
G6 HOSPITALITY FRANCHISING, LLC;
G6 HOSPITALITY PROPERTY, LLC; and
SHIV BRADENTON HOTEL LLC d/b/a MOTEL 6 BRADENTON, FL,
Defendants.

Civil Action No.: ___________________
JURY TRIAL DEMANDED

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff A.O.L., by and through undersigned counsel, and files this Complaint for damages against Defendants, alleging as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for damages under the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), 18 U.S.C. § 1595, arising from the sex trafficking of Plaintiff at a Motel 6–branded hotel operated within the G6 franchise system.

2. Plaintiff was trafficked for commercial sex at the Motel 6 located at 660 67th Street Circle East, Bradenton, Florida 34208 (the "Subject Hotel") intermittently in 2020 and through and inclusive of 2025. Defendants G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, and G6 Hospitality Property, LLC (collectively, the "G6 Defendants") owned, operated, branded, franchised, and/or controlled the Subject Hotel and the Motel 6 system through which it operated. From 2020 until on or about February 4, 2021, the Subject Hotel was owned and operated directly

by G6 Hospitality Property, LLC as a company-owned Motel 6; on or about February 4, 2021, G6 Hospitality Property, LLC sold the Subject Hotel to Defendant Shiv Bradenton Hotel LLC (the "Franchisee Defendant"), which thereafter owned and operated it as a Motel 6 within the G6 franchise system through 2025.

3. Section 1595 imposes civil liability on any person, or entity, who knowingly benefits from participation in a venture that the person knew or should have known was engaged in sex trafficking. Defendants knowingly benefited from, and participated in, the venture through which Plaintiff was trafficked at the Subject Hotel, and knew or should have known that the venture was engaged in sex trafficking.

## II. PARTIES

4. Plaintiff A.O.L. is a natural person born in 1981 and a resident of the State of Florida. Plaintiff proceeds by her initials to protect her privacy and identity given the sensitive and potentially retaliatory nature of the allegations.

5. Defendant G6 Hospitality, LLC is a for-profit Delaware limited liability company with its principal place of business at 6509 Windcrest Drive, Suite 100, Plano, Texas 75024.

6. Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware limited liability company with its principal place of business at 6509 Windcrest Drive, Suite 100, Plano, Texas 75024. G6 Hospitality, LLC and G6 Hospitality Franchising, LLC are the franchisors of the Motel 6 brand and, at all relevant times, owned, operated or co-operated, controlled, and/or managed the Motel 6 brand and the franchise system through which the Subject Hotel operated.

7. Defendant G6 Hospitality Property, LLC is a for-profit Delaware limited liability company with its principal place of business at 6509 Windcrest Drive, Suite 100, Plano, Texas 75024. Upon information and belief, G6 Hospitality Property, LLC held record title to the real

property comprising the Subject Hotel and, together with G6 Hospitality, LLC, owned and operated the Subject Hotel as a company-owned Motel 6 from 2020 until on or about February 4, 2021, when it sold the Subject Hotel to the Franchisee Defendant.

8. Defendant Shiv Bradenton Hotel LLC, doing business as Motel 6 Bradenton, FL, is, upon information and belief, a for-profit Florida limited liability company that acquired the Subject Hotel from G6 Hospitality Property, LLC on or about February 4, 2021 and thereafter owned, operated, controlled, and/or managed the Subject Hotel through the G6 franchise system through 2025, and held record title to the real property comprising the Subject Hotel during that period.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, namely the TVPRA, 18 U.S.C. § 1595.

10. This Court has personal jurisdiction over the G6 Defendants because each maintains its principal place of business in Texas and in this District. This Court has personal jurisdiction over the Franchisee Defendant because it purposefully availed itself of the privilege of conducting activities in Texas and in this District by soliciting and entering into a franchise relationship with the G6 Defendants in this District; by negotiating, executing, and performing the franchise agreements in this District; by directing payments, reservations, notices, reporting, and other required communications to the G6 Defendants in this District; and by agreeing to Texas law and to suit in this District. Plaintiff's claims arise out of and relate to those contacts.

11. Venue is proper in this District. Under 28 U.S.C. § 1391(b)(1), the G6 Defendants reside in this District, each maintaining its principal place of business in Plano, Texas, in Collin County, within the Eastern District of Texas. Under § 1391(c)(2), the Franchisee Defendant is a resident of Texas for venue purposes because it is subject to this Court's personal jurisdiction with

respect to this action, and under § 1391(d), the Franchisee Defendant resides in this District because its contacts with the District would be sufficient to subject it to personal jurisdiction if the District were a separate State. Venue is also proper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—including the franchise venture pursuant to which the Subject Hotel was operated, branded, and controlled—occurred in substantial part in Texas and in this District.

12. Plaintiff's claims against the Franchisee Defendant arise out of the Franchisee Defendant's contacts with Texas through its relationship with the G6 Defendants, whose principal place of business is in this District. The Franchisee Defendant's participation in a venture with the G6 Defendants in operating the Subject Hotel occurred, in substantial part, in Texas and in this District because, upon information and belief: (a) the Franchisee Defendant actively sought out a franchise relationship by contacting the G6 Defendants in Texas; (b) the negotiation, execution, and acceptance of the franchise agreement occurred in this District; (c) the Franchisee Defendant's ongoing performance of the franchise agreement took place, in part, in this District; (d) the franchise agreement contains a choice-of-law provision selecting Texas law as governing; (e) the franchise agreement required the Franchisee Defendant to report information to the G6 Defendants in Texas, including information about incidents involving safety, security, public relations, or serious injuries occurring at or involving the Subject Hotel, including those involving sex-trafficking victims like Plaintiff; (f) the Franchisee Defendant agreed to submit all notices required under the franchise agreement to the G6 Defendants in this District; (g) the Franchisee Defendant was required to attend training and meetings in Texas; (h) the G6 Defendants dictated policies related to safety, security, human trafficking, employee training, and the Franchisee Defendant's response, among other subjects, from their principal place of business in this District; (i) the

Franchisee Defendant had an ongoing obligation to participate in centralized programs operated by the G6 Defendants from their principal place of business in this District; (j) the Franchisee Defendant was required to purchase insurance on behalf of one or more Texas entities; (k) reservation information for rooms at the Subject Hotel passed through a system operated and managed by the G6 Defendants from their principal place of business in Texas; (l) payment information for rooms at the Subject Hotel passed through a system operated and managed by the G6 Defendants in Texas; (m) the benefit that the Franchisee Defendant received from room rentals was governed by the Texas franchise agreement; (n) the Franchisee Defendant agreed to make all payments due under the franchise agreement at the G6 Defendants' principal place of business in this District; (o) the Franchisee Defendant's operation of the Subject Hotel was controlled and influenced by policies set and enforced by the G6 Defendants from their principal place of business in Plano, Texas; and (p) the Franchisee Defendant signed a software licensing agreement with the G6 Defendants for the property-management software the G6 Defendants required it to use in operating the Subject Hotel — including when booking rooms and processing payments — and agreed to file any lawsuit arising from that agreement in the Eastern District of Texas and waived personal-jurisdiction and venue objections.

13. This District is the center of gravity of Plaintiff's claims against the G6 Defendants, whose headquarters, corporate decision-makers, franchise-system administration, brand and safety policies, centralized reservation and payment systems, and the records and witnesses central to Plaintiff's participation-in-a-venture and control allegations are located here. Plaintiff has selected this District as her forum, and her choice is entitled to substantial deference. Because the franchisor conduct at the heart of this action emanated from this District, and because the Franchisee Defendant consented to suit here and waived objections to personal jurisdiction and venue, this

District is a proper and convenient forum, and transfer of this action would merely shift any inconvenience from one party to another and is not warranted.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff Was a Victim of Sex Trafficking at the Subject Hotel.

14. Plaintiff was a victim of sex trafficking as defined by 18 U.S.C. § 1591(a): she was recruited, enticed, harbored, and maintained, and was caused through force, fraud, and coercion to engage in commercial sex acts at the Subject Hotel.

15. Plaintiff was trafficked at the Subject Hotel intermittently from 2020 through and inclusive of 2025, returning to the Subject Hotel on a recurring basis throughout that period. She was trafficked by four male traffickers who acted in concert and who together operated a commercial sex trafficking enterprise at the Subject Hotel and who booked and paid for the rooms used for her trafficking.

16. To compel Plaintiff's commercial sex acts, her traffickers used various means of force, fraud, and coercion, including: (a) physical assault and violence; (b) the administration, supply, and control of controlled substances; (c) psychological coercion and manipulation; (d) isolation and the control and exploitation of Plaintiff; (e) threats of harm and physical violence; and (f) other means of force, fraud, and coercion used by the traffickers. Specifically, Plaintiff's traffickers supplied her with, and cultivated and exploited her dependency upon, controlled substances — including fentanyl, methamphetamine, and crack cocaine — using her addiction to compel her compliance; physically assaulted her, in the view of hotel staff, leaving visible bruises and marks upon her body; subjected her to verbal abuse and degradation; dealt controlled substances from the rooms used for her trafficking; directed her to solicit sex buyers outside the property, including

truck drivers and travelers with out-of-state license plates; and exercised physical and psychological control and dominion over her throughout the period of her trafficking.

17. Plaintiff's traffickers were a recurring presence at the Subject Hotel in connection with the trafficking of Plaintiff. Their presence and activities were known to and recognized by its staff and management. They booked and rented rooms at the property, sometimes under Plaintiff's own name and sometimes under other names, and directed Plaintiff and a group of at least five to ten other women — including women known to Plaintiff as "A." and "B.M.," who were themselves trafficked and were made to recruit other victims and rent rooms at the traffickers' direction, and with whom Plaintiff was at times made to share rooms — to book and occupy rooms; they moved through the lobby, past the front desk, and about the common areas in the open view of the staff; and they dealt with the hotel's manager and front-desk staff face-to-face on a regular and recurring basis. Although the rooms used for Plaintiff's trafficking were frequently kept under a "Do Not Disturb" sign, members of the housekeeping and other staff nonetheless entered those rooms on a recurring basis to clean and service them, where drugs, needles, and used condoms were in plain view and were observed or observable by the staff. The commercial sex acts to which Plaintiff was subjected, together with the physical control and abuse of Plaintiff, occurred within the rooms and upon the grounds of the Subject Hotel, which was the situs and instrumentality of the trafficking.

**B. The Signs of Plaintiff's Trafficking Were Apparent to Hotel Staff.**

18. During the period Plaintiff was trafficked at the Subject Hotel, there were signs obvious to hotel staff and management that she was being trafficked, including: (a) Plaintiff being made to solicit sex buyers outside the property — including truck drivers and travelers with out-of-state license plates — and the resulting foot traffic of those buyers to and from the rooms rented for her trafficking; (b) the open dealing of controlled substances, including fentanyl, methamphetamine,

and crack cocaine, from those rooms; (c) the visible bruising and marks upon Plaintiff's body from physical abuse; (d) Plaintiff's visibly impaired condition from the controlled substances upon which she was dependent; (e) drugs, needles, and used condoms in plain view when staff entered the rooms to clean or service them, notwithstanding the "Do Not Disturb" sign frequently kept upon the door; (f) the recurring maintenance of a "Do Not Disturb" sign on the extended-stay rooms, a recognized indicator of sex trafficking; (g) Plaintiff's and other women's presence at the property in scant and revealing clothing; and (h) other women being trafficked and made to solicit on and around the premises.

19. Hotel staff and management observed, or in the exercise of reasonable care should have observed, the foregoing obvious signs of sex trafficking. Upon information and belief, multiple employees—including management-level, front-desk, and housekeeping staff—observed or were made aware of these signs while acting within the scope and course of their employment. The knowledge of the Subject Hotel's staff is imputed to the Franchisee Defendant and, for the period during which the Subject Hotel was owned and operated by the G6 Defendants, to the G6 Defendants; and, under the G6 Defendants' protocols requiring hotel staff and management to report suspected criminal activity, including sex trafficking, to the G6 Defendants, such knowledge was or should have been reported to and known by the G6 Defendants.

20. Upon information and belief, the Subject Hotel was equipped with surveillance cameras positioned throughout the property, including its lobby, corridors, entrances, walkways, and parking areas, the images from which were displayed on monitors at the front desk and were monitored, or required to be monitored, by staff and management. The red flags of Plaintiff's trafficking occurred within the view of those cameras.

21. These red flags were not merely indicators of commercial sex activity but were indicators of sex trafficking specifically, because they included observable signs of force, coercion, and control over Plaintiff. Individually and collectively, they provided Defendants with notice not only of sex trafficking activity generally at the Subject Hotel, but specifically that Plaintiff was being subjected to trafficking through force, fraud, and coercion.

**C. Defendants Knew or Should Have Known of Sex Trafficking at Motel 6 Properties.**

22. Sex trafficking at hotels, and at Motel 6–branded properties in particular, is a well-documented and longstanding problem of which Defendants had actual and constructive knowledge. The G6 Defendants generate, receive, monitor, and analyze guest complaints and online reviews concerning their branded properties, including the Subject Hotel, a number of which reported prostitution, drug activity, and other trafficking-related conduct.

23. The G6 Defendants have long been on notice of pervasive sex trafficking at Motel 6 properties, including through litigation and government enforcement. A Los Angeles Motel 6 became such a hub for human trafficking and criminal activity that the G6 Defendants paid to settle a public-nuisance action brought by the City of Los Angeles, the settlement of which required the G6 Defendants to change policies that were facilitating sex trafficking. Upon information and belief, the G6 Defendants failed to adequately implement and enforce those changes.

24. Despite actual and constructive knowledge that sex trafficking was widespread at Motel 6 properties and, specifically, that it was or should have been apparent at the Subject Hotel, Defendants continued to rent rooms at, brand, operate, and derive revenue from the Subject Hotel throughout the period of Plaintiff's trafficking.

**D. Defendants Knowingly Benefited from Participation in a Venture They Knew or Should Have Known Was Engaged in Sex Trafficking.**

25. Through the conduct described above, Defendants knowingly benefited from engaging in a venture with the traffickers and with one another.

26. The repeated rental transactions between the traffickers (and persons acting at the traffickers' direction) and the Subject Hotel that occurred during the period Plaintiff was trafficked there were colored by overt indicators of sex trafficking, including the steady foot traffic of sex buyers to and from the rooms; the visible bruising and marks upon Plaintiff from physical abuse in the view of staff; her visibly impaired condition from the controlled substances upon which she was dependent; the open dealing of fentanyl, methamphetamine, and crack cocaine from the rooms; the recurring short-term, cash, day-by-day rentals; and the presence of other women being trafficked at the property — such that Defendants knew, or should have known, that they were renting rooms to, and facilitating, individuals engaged in sex trafficking, and Plaintiff in particular, in violation of the TVPRA.

27. A venture existed between the traffickers and the Franchisee Defendant at the Subject Hotel premises by means of the rooms repeatedly rented for the trafficking — whether rented by the traffickers or at the traffickers' direction — which rooms Defendants knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit. Upon information and belief, Plaintiff's traffickers operated at the property on a routine and repetitive basis, having found in the Subject Hotel a venue where they could conduct their operations without meaningful disruption.

28. The rooms used to traffic Plaintiff were rented and renewed by the traffickers or at the traffickers' direction. Any individual, other than Plaintiff, who booked, rented, renewed, or paid

for a room at the Subject Hotel on behalf of or at the direction of the traffickers was a member of the traffickers' entourage and organization, acting as the traffickers' agent and aiding and abetting the traffickers and the success of the trafficking venture. Accordingly, every such rental transaction was conducted between the Subject Hotel and Plaintiff's trafficking venture, and not with an independent or unaffiliated guest.

29. Discovery will inform whether the traffickers, or individuals at the traffickers' direction, booked rooms at the Subject Hotel that were used for the sex trafficking of Plaintiff in violation of the TVPRA: (a) under the registrant's proper legal name or a false name; (b) whether cash, prepaid card, debit card, or credit card was used at the time of the respective booking or renewal; and (c) whether the staff of the Franchisee Defendant required, for each booking, that the renter show identification.

30. A venture also existed between the Franchisee Defendant and the G6 Defendants pursuant to which the Subject Hotel was operated, branded, and controlled, and from which each derived ongoing revenue.

31. Relative to the Subject Hotel, a continuous business relationship existed between the Franchisee Defendant and the traffickers' sex trafficking business — and not merely with Plaintiff — in that the Franchisee Defendant provided assistance, support, or facilitation to the traffickers and to individuals it knew or should have known were engaged in sex trafficking on the premises, in violation of the TVPRA, including as to Plaintiff; and in doing so lent culpable assistance to, and facilitated the success of, the trafficking venture.

32. Relative to the Subject Hotel, a continuous business relationship likewise existed between the Franchisor Defendants and the traffickers' sex trafficking business — and not merely with Plaintiff — in that the G6 Defendants provided assistance, support, or facilitation to the

traffickers and to individuals they knew or should have known were engaged in sex trafficking on the premises, in violation of the TVPRA, including as to Plaintiff; and in doing so lent culpable assistance to, and facilitated the success of, the trafficking venture.

33. Through the conduct described above, each Defendant also knowingly benefited from engaging in a commercial venture with the other Defendants in operating the Subject Hotel. Defendants associated with one another and with the hotel staff to operate the Subject Hotel, engaged in revenue sharing, and had a common incentive to maximize revenue. Each Defendant received financial benefits from operating the Subject Hotel, including revenue generated specifically by renting the rooms used for the trafficking of Plaintiff. Upon information and belief, pursuant to the franchise agreement, the Franchisee Defendant was required to remit to the G6 Defendants a percentage of the gross room revenue generated at the Subject Hotel, together with additional fees calculated upon that revenue; the G6 Defendants therefore received a direct financial benefit from each room rented at the Subject Hotel, including each room rented for the trafficking of Plaintiff.

34. From 2020 until on or about February 4, 2021, the Subject Hotel was a company-owned Motel 6 owned and operated directly by G6 Hospitality Property, LLC and G6 Hospitality, LLC, and its managers, front-desk staff, and housekeeping staff were the employees of the G6 Defendants. During that period, the G6 Defendants, through their own employees, rented the rooms used for Plaintiff's trafficking, dealt face-to-face with Plaintiff's traffickers and observed or should have observed the open and obvious signs of Plaintiff's trafficking set forth above. The acts, omissions, and knowledge of the Subject Hotel's staff during that period are directly attributable to the G6 Defendants under the doctrine of respondeat superior.

35. A venture within the meaning of 18 U.S.C. § 1595(a) existed during that period directly between Plaintiff's traffickers and the G6 Defendants, which owned and operated the Subject Hotel, knowingly benefited from the rooms repeatedly rented and used for Plaintiff's trafficking, and knew or should have known that the venture was engaged in sex trafficking. On or about February 4, 2021, G6 Hospitality Property, LLC sold the Subject Hotel to the Franchisee Defendant, which thereafter owned and operated it as a Motel 6 within the G6 franchise system, and the participation-in-a-venture, agency, and control allegations set forth herein apply to the Franchisee Defendant and the G6 Defendants throughout that subsequent period.

**E. The Franchisee Defendant and the Staff at the Subject Hotel Acted as the Actual Agents of the G6 Defendants.**

36. The G6 Defendants exercised, or retained the contractual right to exercise, systematic, day-to-day control over the means and methods by which the Franchisee Defendant and hotel staff operated the Subject Hotel — including its reservation, check-in, guest-identification, and payment systems (which the G6 Defendants required, operated, and linked to their corporate network); a brand-wide "do not rent" system and control over whether a reservation could be refused or cancelled; the technology and internet services at the property, including the provider and use restrictions and thus whether the websites commonly used to advertise and solicit commercial sex could be accessed there; mandatory brand, safety, and security standards, policies, and manuals; staff training they created and administered; and the standards for reporting and responding to suspected criminal activity, including human trafficking.

37. The G6 Defendants supplied the Subject Hotel's brand identity, signage, and marks, required the Motel 6 brand to be displayed throughout the property, and held themselves out to the public as its operators, such that guests perceived the Subject Hotel as a Motel 6 operated to the

G6 Defendants' standards. The Franchisee Defendant and the hotel's staff therefore acted as the actual agents of the G6 Defendants in operating the Subject Hotel.

38. Through the franchise system, the G6 Defendants participated directly in aspects of the Subject Hotel's operation that influenced whether and to what extent trafficking occurred there — including by operating the reservation and payment systems through which its rooms were booked and paid for, dictating its safety- and security-related policies, and permitting the traffickers to reserve and pay for rooms on a short-term, night-by-night basis that afforded relative anonymity and non-traceability. As a result of these franchisor-mandated systems and policies, the traffickers operating at the Subject Hotel developed an ongoing business relationship with the property — through repeated room rentals and reliance on the G6 Defendants' policies — that created and sustained a favorable environment for trafficking, and, despite the ongoing trafficking, Defendants continued renting rooms to traffickers pursuant to those systems and policies without meaningful intervention.

## V. CAUSES OF ACTION

### COUNT I — Beneficiary Liability under 18 U.S.C. § 1595(a) (All Defendants)

39. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

40. Plaintiff was a victim of a violation of 18 U.S.C. § 1591(a).

41. Each Defendant knowingly benefited, financially and by receiving things of value, from its participation in a venture—the operation of the Subject Hotel—with the other Defendants and the staff of the Subject Hotel.

42. Each Defendant participated in that venture within the meaning of § 1595(a). Participation in a venture is satisfied by taking part in a common undertaking or a continuous

business relationship involving risk and profit. The Franchisee Defendant participated through its continuous business relationship and pattern of dealing with Plaintiff's traffickers, and the G6 Defendants participated through their continuous business relationship with the Franchisee Defendant and their operation, branding, control of, and profiting from the Subject Hotel, all as alleged above.

43. Each Defendant knew or should have known that the venture was engaged in sex trafficking in violation of 18 U.S.C. § 1591(a), based on the red flags apparent at the Subject Hotel and Defendants' actual and constructive knowledge of pervasive sex trafficking at Motel 6–branded properties.

44. Defendants are therefore liable to Plaintiff under 18 U.S.C. § 1595(a).

**COUNT II — Vicarious Liability for TVPRA Violations (G6 Defendants)**

45. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

46. The Franchisee Defendant and the staff of the Subject Hotel acted as the actual agents of the G6 Defendants in operating the Subject Hotel, and the G6 Defendants exercised, or retained the right to exercise, systematic and day-to-day control over the means and methods of that operation.

47. The G6 Defendants are vicariously liable for the TVPRA violations of the Franchisee Defendant and the staff of the Subject Hotel committed within the scope of that agency.

## VI. DAMAGES

48. Defendants' involvement in, and their failure — by and through their agents, employees, and staff — to timely and properly prevent the sex trafficking of Plaintiff or to timely intervene, was a proximate cause, competent producing cause, and substantial factor in causing

Plaintiff's severe injuries, including but not limited to being the victim of sex trafficking at the Subject Hotel and suffering the physical and mental trauma of being induced to engage in commercial sex with numerous sex buyers while being trafficked, all while under the force, fraud, and coercion of her traffickers, together with all residual injuries, including post-traumatic stress disorder.

49. Plaintiff's sex trafficking at the Subject Hotel was a proximate cause, competent cause, and substantial factor in causing her severe and permanent injuries, including but not limited to the horror of being a victim of sex trafficking and significant psychological trauma resulting from the abuse she was caused to endure. This trauma has led to depression, anxiety, substance abuse, and post-traumatic stress disorder, which continue to impair her daily functioning.

50. As a direct and proximate result of Defendants' conduct and their multiple failures to adopt, implement, enforce, and modify adequate anti-trafficking measures at the Subject Hotel, Plaintiff was sex trafficked, sexually exploited, and repeatedly victimized at the Subject Hotel in violation of the TVPRA.

51. As a consequence of being sex trafficked at the Subject Hotel, Plaintiff has suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries, in amounts to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, and award: (a) all available compensatory damages for the losses described above; (b) past and future emotional distress; (c) consequential and/or special damages; (d) all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life; (e) physical pain and suffering; (f) disgorgement of profits obtained through

unjust enrichment; (g) restitution; (h) all damages allowable under the TVPRA; (i) reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595(a); (j) punitive damages with respect to each cause of action; (k) costs of this action; (l) pre- and post-judgment interest and all other interest recoverable; and (m) such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 10, 2026

Respectfully submitted,

/s/ Jason Byrd
Jason Byrd
448 Orleans
Beaumont, TX 77701
Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

Randolph D. Janis, Esq.
DOUGLAS & LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
DOUGLAS & LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff